RECEIPT # 54879
AMOUNT $ 150
SUMMONS ISSUED Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 3-29-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSTECH COMMUNICATIONS, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| ROBERT CURRAN, | ) NO. |
| Defendant. | ) |

04-CV-10604

MAGISTRATE JUDGE Bowler

## VERIFIED COMPLAINT

### INTRODUCTION

Having hired defendant Robert Curran ("Curran") to sell a database product developed and owned by plaintiff MassTech Communications, Inc. ("MTC"), and in spite of his having signed a confidentiality agreement, MTC has discovered that Curran has actually been selling MTC's product for his own account since at least April 2003. His employment was terminated for poor performance on March 15, 2004, before MTC discovered his theft. MTC has since learned that Curran continues to sell MTC's product, complete with the wholesale misappropriation of computer search code and other confidential materials. MTC therefore seeks by this action damages and preliminary and permanent injunctive relief against Curran's theft of MTC's property.

### PARTIES

1. Plaintiff MTC is a corporation formed under the laws of the State of Delaware with its principal place of business at 529 Main Street, Suite 602, Boston, MA 02129.

2. Defendant Curran is, upon information and belief, a resident of the Commonwealth residing or doing business from 89 Access Road, Suite A, Norwood, MA 02062.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. §1331, because this case arises under the Computer Fraud and Abuse Act, 18 U.S.C. §1030(g). Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b).

## FACTS

*Background Information On MassTech Communications, Inc.*

4. MTC's ultimate parent is American City Business Journals, Inc. ("ACBJ"), which publishes business newspapers and periodicals across the country. MTC publishes Mass High Tech, a weekly subscriber-based journal that concerns and serves the rapidly growing technology industries in New England.

5. In addition to publishing Mass High Tech, MTC has developed a proprietary database of information, comprised of a listing of high tech companies in the New England area and key personnel at those companies (the "Database"). The Database currently contains approximately 9,000 companies and contact information for more than 40,000 executives.

6. The Database required years of work and substantial cost to develop. The first print version of this database was compiled in 1986, and since then, information has been updated and added on an annual basis. For instance, it took approximately three years for MHT to grow the database from 7,000 companies included when ACBJ purchased the company, to the more than 9,000 companies listed in 1999. At present, the database contains just under 9,000 companies. The Database is continually updated and thus is an ongoing investment of MHT. Curran did not contribute to the creation or maintenance of the Database.

7. The information contained in the Database is a product that MHT has long sold in book and CD-ROM form. In 1999, MHT hired a team of programmers to develop a web-based version of the Database that could be searched and reviewed over the Internet. It took nearly a year for the team to develop the necessary software to permit Internet access to the Database. This was in addition to software that MHT developed to permit searching the directory in a CD-ROM format. In 2002, MHT again hired programmers to develop a read-only version of its web-based product for sales to libraries and other entities. MHT accordingly uses its computerized database in interstate commerce and interstate communication.

8. To protect its confidential information, MTC has adopted a "conflict of interest" policy that governs not only conflicts of interest but ensures confidentiality of its proprietary information (the "Policy"). The policy was created by ACBJ and is used by ACBJ subsidiaries. A copy of the Policy is attached as Exhibit A. MTC employees are required physically to sign a copy of the Policy when they are hired, and annually to reaffirm in writing their understanding of and agreement to comply with the Policy.

### *MTC Hires Curran*

9. On April 20, 2000, MTC hired Curran as a sales person with responsibility for selling the Database and print directories. As MTC consistently requires, Curran signed a copy of the Policy. A true copy of the Policy bearing Curran's signature is attached hereto as Exhibit B. No part of Curran's duties involved adding to or soliciting names for the Database, nor has he in fact done so.

10. Curran agreed that he would "not use, directly or indirectly, for [his] own or any other person's financial gain, any information about [ACBJ] which the employee obtained in connection with ABCJ employment." Ex. B at 1. He also agreed that "all material gleaned by [him] in the course of [his] work for ACBJ is deemed to be strictly the Company's property." Id.

## *Curran Unlawfully Accesses MTC's Computer System, Willfully Breaches His Agreements With MTC and Steals the Company's Property*

11. Unbeknownst to MTC, on information and belief, Curran began violating his agreements by selling the Database for his own account. In April 2003, or earlier, on information and belief, Curran established an Internet site on the World Wide Web at the address http://www.dsdirect.com, referring to a company called DataSource Direct. On information and belief, Curran has sold the Database from the dsdirect.com website since April 2003, or earlier.

12. In order to accomplish such diversion of sales, Curran necessarily exceeded his permitted rights of access to MTC's computer system, for the purpose of copying data and computer code that he then used for his own personal gain.

13. Shortly after the beginning of 2004, Kai Schulze, an account executive at MTC who had been hired in December 2003, noticed that contact information for customers who had purchased a directory product in the previous year had been deleted from MTC's records. MTC confronted Curran about the deletions, and he admitted that he had deleted the records. Upon information and belief, Curran deleted the records so that he would have exclusive access to customer contact information for his own business.

14. At the end of each calendar year, MTC sends a direct mail solicitation to past and potential customers of the Database and the other MTC directory products, in advance of a new edition of the directory that is generally published in January. That solicitation reliably produces a substantial number of sales. In the direct mail solicitation sent in late 2003, potential customers were invited to call Curran. MTC received no contacts from the 2003 solicitation.

15. On March 15, 2004, MTC terminated Curran's at-will employment for lack of productivity in sales and failure to work assigned hours. On March 15, MTC

did not know about Curran's theft of the Database or the existence of the dsdirect.com website.

16. After his termination, Schulze took over responsibility for receiving customer responses to the direct-mail solicitation. Calls suddenly increased, and MTC sold approximately $10,000 in directory products the week after Curran's termination.

17. On March 25, 2004, a customer of MTC's, who has purchased the print directory in the past, contacted Schulze and told him that Curran had contacted the customer about purchasing a database of New England High Tech companies from dsdirect.com. The customer was suspicious because the product Curran was offering sounded so similar to MTC's product.

18. Schulze then visited the dsdirect.com website and noted a number of similarities between the database offered there and MTC's Database. (For the Court's reference, true and correct copies of pages from that website, as displayed on March 26, 2004, are attached hereto as Exhibit C).

19. For example, the dsdirect.com website offers a database of "business technology companies" in New England, and permits customers to choose a database of manufacturing companies only, software companies only, or both. MTC's Database is similarly divided between manufacturing and software companies, for historical reasons related to the method by which the Database was developed.

20. Curran's dsdirect.com site similarly describes its database as offering "over 9,300 companies and over 26,000 contacts throughout New England," as compared to MTC's Database, which contains (and is advertised as containing) approximately 9,000 companies and 40,000 contacts. Curran also offers the database at the same or similar price as MTC's Database.

21. On information and belief, Curran's site also permits users to search the database over the Internet.

22. Investigating further, MTC learned through publicly available information that the dsdirect.com website had been created in April 2003. An example printout of such information, including information associating the site with Kevin Curran -- who on information and belief is Robert Curran's brother -- is attached at Exhibit D.

23. Reviewing its sales figures of the Database during 2003, and year-over-year sales data comparing 2002 to 2003, MTC noticed that its sales of the Database in January, February, and March 2003 were comparable to the same months in 2002, but that sales began to dip in April 2003 and fell off dramatically thereafter -- just as dsdirect.com came into existence.

## COUNT I
### (Computer Fraud and Abuse Act)

24. Plaintiff incorporates by reference the allegations set forth above.

25. In accessing MTC's computers for the purpose of selling the Database and Database-related services over the Internet, Curran intentionally accessed a computer used for interstate commerce or communication without authorization, or in the alternative exceeded his authorized access rights.

26. In accessing MTC's computers as described above, Curran knowingly and with intent to defraud obtained one or more things of value and furthered a plan to defraud MTC of revenue from the sales of its products.

27. The computer system or systems that Curran accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2).

28. As a result of Curran's unlawful access, MTC has suffered losses and damage in an amount to be proved at trial.

## COUNT II
### (Copyright Infringement)

29. Plaintiff incorporates by reference the allegations set forth above.

30. The Database is an original work, produced by employees of MTC acting within the scope of their employment.

31. Curran has made a substantial duplicate of the Database for his own use and sale to third parties.

32. The misappropriation of MTC's original work and offering of the Database as the original product of dsdirect.com constitutes an infringement of MTC's copyright in violation of 17 U.S.C. §§ 106 and 501.

### COUNT III
### (Breach of Contract)

33. Plaintiff incorporates by reference the allegations set forth above.

34. As an express condition of his employment with MTC, Curran executed a conflict of interest policy that forbade his use of MTC property for personal gain. *See* Ex. A.

35. By his actions, Curran has repeatedly and willfully breached his promise not to use MTC property for personal gain.

36. Curran's breaches of the Policy have caused plaintiff to suffer substantial damages in lost sales and lost relationships with customers.

### COUNT IV
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

37. Plaintiff incorporates by reference the allegations set forth above.

38. By his conduct, as set forth above, Curran has breached the covenant of good faith and fair dealing implied in the Policy to which he agreed.

39. As a result of Curran's breaches, plaintiff has suffered substantial damages.

### COUNT V
### (Breach of the Duty of Loyalty)

40. Plaintiff incorporates by reference the allegations set forth above.

41. By conducting a directly competing business while on company time and using company resources, Curran breached the duty of loyalty he owed to MTC while employed by MTC.

42. As a results of defendant's breach, plaintiff has suffered substantial damages.

## COUNT VI
### (Misappropriation of Confidential Information)

43. Plaintiff incorporates by reference the allegations set forth above.

44. As set forth above, Curran has misappropriated confidential information which is the property of plaintiff and/or in which plaintiff has a substantial proprietary interest, including but not limited to by sale of the Database without authorization and for his own account.

45. Based on Curran's longstanding misconduct, MTC believes that Curran intends to continue selling the Database for his own account.

## COUNT VII
### (Taking of Trade Secrets; M.G.L. c. 93, §§ 42, 42A)

46. Plaintiff incorporates by reference the allegations set forth above.

47. As set forth above, Curran has misappropriated and/or has threatened to misappropriate trade secrets learned by him in the course of his employment at MTC.

48. As a result of the misappropriation of trade secrets by Curran, plaintiff has suffered substantial damages and irreparable injury, and any further misappropriation would cause further incalculable harm.

## COUNT VIII
### (G.L. c. 93A)

49. Plaintiff incorporates by reference the allegations set forth above.

50. Curran and MTC are engaged in trade and commerce within the Commonwealth.

51.    By his actions described above since the termination of his employment at MTC, Curran has engaged in unfair and deceptive acts or practices in violation of G.L. c. 93A.

52.    Curran's unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth.

53.    As a result of Curran's unfair and deceptive acts or practices, MTC has suffered a loss and injury to its money and property within the meaning of G.L. c. 93A.

### COUNT IX
### (Trespass)

54.    Plaintiff incorporates by reference the allegations set forth above.

55.    In improperly accessing MTC's computers, Curran intentionally trespassed on MTC's chattels.

56.    As a result of Curran's trespass, MTC has suffered damages in an amount to be proved at trial.

WHEREFORE, plaintiff MTC respectfully requests that this Court:

(a)    preliminarily and permanently enjoin defendant Curran from sale of the Database or other use or dissemination of MTC's products, confidential information and/or trade secrets;

(b)    enter an order requiring defendant Curran to return or destroy all copies of the Database and all other confidential information and other MTC property in his possession;

(c)    enter judgment against defendant Curran for all damages incident to his breaches and other misconduct as alleged herein;

(d)    award MTC double or treble damages and MTC's reasonable attorneys' fees and costs; and

(e)    award such other relief as the Court may deem just and proper.

Respectfully Submitted,

MASSTECH COMMUNICATIONS, INC.

By its attorneys,

/s/ Mark W. Batten
_____
Mark W. Batten, BBO #566211
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: March 29, 2004

03/29/2004  13:02   16172429373                MASS HIGH TECH                        PAGE  01/01
         MAR 29 2004 13:31  FR BINGHAM MCCUTCHEN LLP         TO 96172429373    P.01

## VERIFICATION OF MARK PILLSBURY

I, Mark Pillsbury, hereby depose and say that I am the Publisher of Mass. High Tech, that I have read the foregoing Verified Complaint, and that I hereby verify that the allegations set forth in the Verified Complaint are true and correct of my own personal knowledge. All statements made on information and belief are true to the best of my personal knowledge.

_____
Mark Pillsbury