## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSTECH COMMUNICATIONS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>ROBERT CURRAN, KEVIN CURRAN, and )<br>THE MARKETPLACE GROUP, INC., )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 04-CV-10604 NG |

## AMENDED COMPLAINT

### INTRODUCTION

Having hired defendant Robert Curran ("Curran") to sell a database product developed and owned by plaintiff MassTech Communications, Inc. ("MTC"), and in spite of his having signed a confidentiality agreement, MTC has discovered that Curran has actually been selling MTC's product for his own account since at least April 2003. His employment was terminated for poor performance on March 15, 2004, before MTC discovered his theft. MTC has since learned that Curran continues to sell MTC's product, complete with the wholesale misappropriation of computer search code and other confidential materials. He is doing so with assistance of his brother, Kevin Curran, and the company with which Kevin Curran is associated, The MarketPlace Group, Inc. MTC therefore seeks by this action damages and preliminary and permanent injunctive relief against the theft of MTC's property being carried out by Curran, by Kevin Curran, and by The MarketPlace Group.

## PARTIES

1.    Plaintiff MTC is a corporation formed under the laws of the State of Delaware with its principal place of business at 529 Main Street, Suite 602, Boston, MA 02129.

2.    Defendant Curran is, upon information and belief, a resident of the Commonwealth residing or doing business from 89 Access Road, Suite A, Norwood, MA 02062.

3.    Defendant Kevin Curran is, upon information and belief, Curran's brother and a resident of the Commonwealth residing or doing business from 89 Access Road, Norwood, MA 02062.

4.    Defendant The MarketPlace Group, Inc. is, upon information and belief, a Massachusetts corporation with a principal place of business at 89 Access Road, Norwood, MA 02062.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter under 28 U.S.C. §1331, because this case arises under the Computer Fraud and Abuse Act, 18 U.S.C. §1030(g). Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b).

## FACTS

### Background Information On MassTech Communications, Inc.

6.    MTC's ultimate parent is American City Business Journals, Inc. ("ACBJ"), which publishes business newspapers and periodicals across the country. MTC publishes Mass High Tech, a weekly subscriber-based journal that concerns and serves the rapidly growing technology industries in New England.

7.    In addition to publishing Mass High Tech, MTC has developed a proprietary database of information, comprised of a listing of high tech companies in the New England area, detailed company descriptions and related information, and key personnel at those companies (the "Database"). The Database currently contains

approximately 9,000 companies and contact information for more than 40,000 executives.

8.    The Database required years of work and substantial cost to develop. The first print version of this database was compiled in 1986, and since then, information has been updated and added on an annual basis. For instance, it took approximately three years for MHT to grow the database from 7,000 companies included when ACBJ purchased the company, to the more than 9,000 companies listed in 1999. At present, the database contains just under 9,000 companies. The Database is continually updated and thus is an ongoing investment of MHT. Curran did not contribute to the creation or maintenance of the Database.

9.    The information contained in the Database is a product that MHT has long sold in book and CD-ROM form. In 1999, MHT hired a team of programmers to develop a web-based version of the Database that could be searched and reviewed over the Internet. It took nearly a year for the team to develop the necessary software to permit Internet access to the Database. This was in addition to software that MHT developed to permit searching the directory in a CD-ROM format. In 2002, MHT again hired programmers to develop a read-only version of its web-based product for sales to libraries and other entities. MHT accordingly uses its computerized database in interstate commerce and interstate communication.

10.    To protect its confidential information, MTC has adopted a "conflict of interest" policy that governs not only conflicts of interest but ensures confidentiality of its proprietary information (the "Policy"). The policy was created by ACBJ and is used by ACBJ subsidiaries. A copy of the Policy is attached as Exhibit A. MTC employees are required physically to sign a copy of the Policy when they are hired, and annually to reaffirm in writing their understanding of and agreement to comply with the Policy.

### MTC Hires Curran

11.    On April 20, 2000, MTC hired Curran as a sales person with responsibility for selling the Database and print directories.  As MTC consistently requires, Curran signed a copy of the Policy.  A true copy of the Policy bearing Curran's signature is attached hereto as Exhibit B.  No part of Curran's duties involved adding to or soliciting names for the Database, nor has he in fact done so.

12.    Curran agreed that he would "not use, directly or indirectly, for [his] own or any other person's financial gain, any information about [ACBJ] which the employee obtained in connection with ABCJ employment."  Ex. B at 1.  He also agreed that "all material gleaned by [him] in the course of [his] work for ACBJ is deemed to be strictly the Company's property."  Id.

### Curran Unlawfully Accesses MTC's Computer System, Willfully Breaches His Agreements With MTC and Steals the Company's Property

13.    Unbeknownst to MTC, on information and belief, Curran began violating his agreements by selling the Database for his own account.  In April 2003, or earlier, on information and belief, Curran established an Internet site on the World Wide Web at the address http://www.dsdirect.com, referring to a company called DataSource Direct.  On information and belief, Curran has sold the Database from the dsdirect.com website since April 2003, or earlier.

14.    The www.dsdirect.com website is registered to defendant The MarketPlace Group, Inc.  A true and correct copy of a printout from a recognized Internet database of domain names, evidencing that The MarketPlace Group is the owner of the dsdirect.com domain, is attached hereto as Exhibit D.  The same documents list "kmcurran@MARKETPLACE-GROUP.COM" as the e-mail address for the administrative contact at The MarketPlace Group.  Upon information and belief, that is the email address used by defendant Kevin Curran.

15.    In order to accomplish the diversion of sales from MTC, Curran necessarily exceeded his permitted rights of access to MTC's computer system, for the purpose of copying data and computer code that he then used for his own personal gain.

16.    Shortly after the beginning of 2004, Kai Schulze, an account executive at MTC who had been hired in December 2003, noticed that contact information for customers who had purchased a directory product in the previous year had been deleted from MTC's records.    MTC confronted Curran about the deletions, and he admitted that he had deleted the records. Upon information and belief, Curran deleted the records so that he would have exclusive access to customer contact information for his own business.

17.    At the end of each calendar year, MTC sends a direct mail solicitation to past and potential customers of the Database and the other MTC directory products, in advance of a new edition of the directory that is generally published in January. That solicitation reliably produces a substantial number of sales.    In the direct mail solicitation sent in late 2003, potential customers were invited to call Curran.    MTC received few, if any, contacts from the 2003 solicitation.

18.    On March 15, 2004, MTC terminated Curran's at-will employment for lack of productivity in sales and failure to work assigned hours. On March 15, MTC did not know about Curran's theft of the Database or the existence of the dsdirect.com website.

19.    After his termination, Schulze took over responsibility for receiving customer responses to the direct-mail solicitation. Calls suddenly increased, and MTC sold approximately $10,000 in directory products the week after Curran's termination.

20.    On March 25, 2004, a customer of MTC's, who has purchased the print directory in the past, contacted Schulze and told him that Curran had contacted the customer about purchasing a database of New England High Tech companies from

dsdirect.com. The customer was suspicious because the product Curran was offering sounded so similar to MTC's product.

21. Schulze then visited the dsdirect.com website and noted a number of similarities between the database offered there and MTC's Database. (For the Court's reference, true and correct copies of pages from that website, as displayed on March 26, 2004, are attached hereto as Exhibit C).

22. For example, the dsdirect.com website offers a database of "business technology companies" in New England, and permits customers to choose a database of manufacturing companies only, software companies only, or both. MTC's Database is similarly divided between manufacturing and software companies, for historical reasons related to the method by which the Database was developed.

23. Curran's dsdirect.com site similarly describes its database as offering "over 9,300 companies and over 26,000 contacts throughout New England," as compared to MTC's Database, which contains (and is advertised as containing) approximately 9,000 companies and 40,000 contacts. Curran also offers the database at the same or similar price as MTC's Database.

24. On information and belief, Curran's site also permits users to search the database over the Internet. In addition, Curran's site allows users to purchase a "view only" version of the database, a feature MTC developed in 2002 at considerable time and expense for sales to libraries and other public entities.

25. For software companies, Curran's database also includes data about the computer operating systems -- Windows, Macintosh, Linux, and others -- for which the software companies write software. MTC collects that information for the Database solely because of a relationship with the Massachusetts Software Council, which is a customer of MTC's and which has requested that such data be included. The operating systems data is unique to MTC's Database. The presence of the same information in

Curran's database is a further indication that the data he is offering for sale was stolen from MTC.

26.    Investigating further, MTC learned through publicly available information that the dsdirect.com website had been created in April 2003. An example printout of such information, including information associating the site with Kevin Curran -- who on information and belief is Robert Curran's brother -- is attached at Exhibit D.

27.    Reviewing its sales figures of the Database during 2003, and year-over-year sales data comparing 2002 to 2003, MTC noticed that its sales of the Database in January, February, and March 2003 were comparable to the same months in 2002, but that sales began to dip in April 2003 and fell off dramatically thereafter -- just as dsdirect.com came into existence.

### This Court Grants A Temporary Restraining Order, But Curran Ignores It

28.    On March 29, 2004, this Court granted MTC's motion for a temporary restraining order, which among other things forbade Curran "from direct or indirect competition with MTC and/or solicitation of MTC's customers and contacts."

29.    A copy of the restraining order was duly served on Curran in accordance with the Federal Rules of Civil Procedure on March 29, 2004.

30.    On April 1, 2004, disregarding this Court's injunction, Curran sent an email solicitation to several potential customers, advertising the availability of the "Data Source Direct on-line database" and inviting customers to his website, www.datasourcedirect.com. A true copy of the email, which one of the recipients forwarded to MTC, is attached hereto as Exhibit E.

31.    The email advertises Data Source Direct's telephone number as 781-762-6000. That is also the telephone number of defendant The MarketPlace Group. A copy of a printout from a website maintained by The MarketPlace Group, listing that same

phone number as well as the Norwood, Massachusetts address that Curran and the company share, is attached hereto as Exhibit F.

### COUNT I
### (Computer Fraud and Abuse Act)
### (All Defendants)

32.    Plaintiff incorporates by reference the allegations set forth above.

33.    In accessing MTC's computers for the purpose of selling the Database and Database-related services over the Internet, Curran intentionally accessed a computer used for interstate commerce or communication without authorization, or in the alternative exceeded his authorized access rights.

34.    Upon information and belief, defendants Kevin Curran and The MarketPlace Group also intentionally accessed MTC's computers either without authorization or exceeding their authorization.    Upon information and belief, defendants Kevin Curran and The MarketPlace Group also knowingly participated in and aided and abetted Curran's unlawful access as described above.

35.    In accessing MTC's computers as described above, defendants knowingly and with intent to defraud obtained one or more things of value and furthered a plan to defraud MTC of revenue from the sales of its products.

36.    The computer system or systems that defendants accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2).

37.    As a result of defendants' unlawful access, MTC has suffered losses and damage in an amount to be proved at trial.

### COUNT II
### (Copyright Infringement)
### (All Defendants)

38.    Plaintiff incorporates by reference the allegations set forth above.

39.    The Database is an original work, produced by employees of MTC acting within the scope of their employment.

40.    Curran has made a substantial duplicate of the Database for his own use and sale to third parties.  Upon information and belief, the duplicate materials are being stored on computers owned and/or in the possession and control of defendants Kevin Curran and The MarketPlace Group, and the materials are being sold and otherwise made available to the public using such computer systems.

41.    The misappropriation of MTC's original work and offering of the Database as the original product of Data Source Direct constitutes an infringement of MTC's copyright by all defendants in violation of 17 U.S.C. §§ 106 and 501.

**COUNT III**
**(Breach of Contract)**
**(Defendant Robert Curran)**

42.    Plaintiff incorporates by reference the allegations set forth above.

43.    As an express condition of his employment with MTC, Curran executed a conflict of interest policy that forbade his use of MTC property for personal gain.  *See* Ex. A.

44.    By his actions, Curran has repeatedly and willfully breached his promise not to use MTC property for personal gain.

45.    Curran's breaches of the Policy have caused plaintiff to suffer substantial damages in lost sales and lost relationships with customers.

**COUNT IV**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(Defendant Robert Curran)**

46.    Plaintiff incorporates by reference the allegations set forth above.

47.    By his conduct, as set forth above, Curran has breached the covenant of good faith and fair dealing implied in the Policy to which he agreed.

48.    As a result of Curran's breaches, plaintiff has suffered substantial damages.

**COUNT V**
**(Breach of the Duty of Loyalty)**

LITDOCS:263381.1

**(Defendant Robert Curran)**

49.    Plaintiff incorporates by reference the allegations set forth above.

50.    By conducting a directly competing business while on company time and using company resources, Curran breached the duty of loyalty he owed to MTC while employed by MTC.

51.    As a results of defendant's breach, plaintiff has suffered substantial damages.

## COUNT VI
### (Misappropriation of Confidential Information)
### (All Defendants)

52.    Plaintiff incorporates by reference the allegations set forth above.

53.    As set forth above, Curran has misappropriated confidential information which is the property of plaintiff and/or in which plaintiff has a substantial proprietary interest, including but not limited to the sale of the Database without authorization and for his own account.

54.    Defendants Kevin Curran and The MarketPlace Group, Inc., in hosting the stolen material and using their computer systems to transmit MTC's data, have also misappropriated MTC's confidential information, and are knowingly participating in and aiding and abetting Curran's misappropriation.

55.    Based on Curran's longstanding misconduct, MTC believes that Curran intends to continue selling the Database for his own account.

## COUNT VII
### (Taking of Trade Secrets; M.G.L. c. 93, §§ 42, 42A)
### (All Defendants)

56.    Plaintiff incorporates by reference the allegations set forth above.

57.    As set forth above, Curran has misappropriated and/or has threatened to misappropriate trade secrets learned by him in the course of his employment at MTC.

58.    As set forth above, defendants Kevin Curran and The MarketPlace Group, Inc. have also misappropriated trade secrets owned by MTC.

LITDOCS:263381.1

59.    As a result of the misappropriation of trade secrets by the defendants, plaintiff has suffered substantial damages and irreparable injury, and any further misappropriation would cause further incalculable harm.

## COUNT VIII
### (G.L. c. 93A)
### (All Defendants)

60.    Plaintiff incorporates by reference the allegations set forth above.

61.    Plaintiff and defendants are engaged in trade and commerce within the Commonwealth.

62.    By their actions described above since the termination of Curran's employment at MTC, defendants have engaged in unfair and deceptive acts or practices in violation of G.L. c. 93A.

63.    Defendants' unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth.

64.    As a result of defendants' unfair and deceptive acts or practices, MTC has suffered a loss and injury to its money and property within the meaning of G.L. c. 93A.

## COUNT IX
### (Trespass)
### (All Defendants)

65.    Plaintiff incorporates by reference the allegations set forth above.

66.    In improperly accessing MTC's computers, defendants intentionally trespassed on MTC's chattels.

67.    As a result of defendants' trespass, MTC has suffered damages in an amount to be proved at trial.

WHEREFORE, plaintiff MTC respectfully requests that this Court:

(a)    preliminarily and permanently enjoin defendants from sale of the Database or other storage, copying, use or dissemination of MTC's products, confidential information and/or trade secrets;

-11-

(b)    enter an order requiring defendants to return or destroy all copies of the Database and all other confidential information and other MTC property in their possession;

(c)    enter judgment against defendants for all damages incident to their misconduct as alleged herein;

(d)    award MTC double or treble damages and MTC's reasonable attorneys' fees and costs; and

(e)    award such other relief as the Court may deem just and proper.

Respectfully submitted,

MASSTECH COMMUNICATIONS, INC.

By its attorneys,

_____
Mark W. Batten, BBO #566211
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated:  April 9, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served on all counsel of record by Federal Express, this 9th day of April, 2004.

_____
Mark W. Batten

-12-