IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSTECH COMMUNICATIONS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT CURRAN, KEVIN CURRAN )<br>and THE MARKETPLACE GROUP, INC. )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>NO.  04 CV 10604 NG |

**PLAINTIFF'S MOTION FOR JUDGMENT**

**INTRODUCTION**

The parties to this case entered into a written settlement agreement on October 20, 2004, a copy of which is attached hereto at Exhibit A, and which by its terms requires entry of judgment in favor of the plaintiff, MassTech Communications, Inc. ("MassTech").  The defendants have refused to comply with the plain, unambiguous terms of the agreement, and MassTech accordingly moves for entry of judgment in its favor.

**BACKGROUND[1]**

Defendant Robert Curran ("Curran") was a salesman employed by MassTech to sell a valuable database product that included information concerning approximately 9,000 high tech companies in the New England area and contact information for more than 40,000 executives at those companies.  MassTech developed its database product at substantial expense, beginning in 1986, and updated it regularly.  The product was created without any assistance or contribution by Curran.

Curran's employment was terminated on March 15, 2004, after MassTech learned that Curran had been attempting to sell MassTech's database for almost a year from his own

---

[1] The facts in this section are taken from the Verified Complaint.

/- Current/8025601v1

website, dsdirect.com, and for his own account.  Curran also deleted customer records from MassTech's computers.

In addition to terminating Curran, MassTech brought this action, alleging violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030; copyright infringement; and several counts under Massachusetts statutory and common law.  MassTech named as defendants not only Curran, but also his brother, Kevin Curran, and The Marketplace Group, a company apparently owned at least in part by Kevin Curran; MassTech alleged that the two latter defendants participated in Curran's scheme to steal and sell MassTech's product.

On April 13, 2004, after briefing and argument at which the defendants were represented by counsel, this Court entered a preliminary injunction in favor of MassTech and against the defendants.  The injunction, a copy of which is attached hereto at Tab B, forbade the defendants from (a) further use or dissemination of MassTech's confidential information; (b) altering data on computer or data storage devices; or (c) soliciting MassTech's customers.

Discovery then commenced, but shortly thereafter the parties came to an agreement to settle the matter.  See Tab A (the "Settlement Agreement").  In sum, in the Settlement Agreement Robert and Kevin Curran consented to the entry of judgment against them, agreed to make the prohibitions of the preliminary injunction permanent, and made a payment to MassTech.  Settlement Agreement ¶¶1, 3.  The defendants also agreed to provide records sufficient to permit MassTech to evaluate the defendants' contention that they had received no revenue from the sale of any MassTech database product, and to make a supplemental payment of any such revenues to MassTech.

The initial payment was made, records were provided, and MassTech ultimately agreed not to press for any supplemental payment.  At this stage, however, the defendants refused to follow through on the remaining obligations to which they had agreed.  Specifically, Robert

and Kevin Curran refused to consent to the entry of judgment against them on the terms specified in the Settlement Agreement.

## ARGUMENT

### 1. The Settlement Agreement Is Enforceable.

The Settlement Agreement, like any contract, is enforceable in accordance with its terms, because the defendants cannot assert any valid defense to its enforcement. The agreement indisputably was signed by all parties, and all parties were represented by counsel throughout the process of negotiation and execution of the agreement. Nor did MassTech simply dictate terms; as the first page of the final version reflects, the defendants read over the Settlement Agreement carefully enough to require that changes be made. There is no claim, or at least MassTech is not aware of one, that any of the defendants lacked the capacity to understand the Agreement or to enter into it as an alternative to potentially expensive litigation that might well have resulted in more significant remedies for MassTech than the settlement requires.

Defendants have no defense to the enforcement of the Settlement Agreement; it is a valid contract, for ample consideration, and should be enforced in accordance with its terms.

### 2. The Terms Of The Settlement Agreement Are Not Unconscionable.

Defendants Robert and Kevin Curran apparently refuse to honor their agreement that the April 13, 2004 preliminary injunction become permanent, primarily because that injunction forbids them from soliciting MassTech's customers or contacts. That provision is as valid as the others and should be enforced in accordance with the parties' agreement, for several reasons.

First, the provision in question is not a non-competition agreement, which might be said to limit the Currans' employment opportunities. Indeed, as to Kevin Curran, it does not affect employment at all; he is a Vice-President of The Marketplace Group, which apparently does

3

not sell databases of high-tech companies. As to Robert Curran, he is free under the terms of the injunction, as extended by the Settlement Agreement, to accept employment without restriction on either the employer or his job duties. His limited obligation is not to solicit business from MassTech's customers and contacts as of April 2004.

Second, this is not the typical non-solicitation provision. Every Massachusetts case of which MassTech is aware concerning the enforceability of such covenants arises in the context of either an employment contract or the sale of a business. See, e.g., Wells v. Wells, 9 Mass. App. Ct. 321, 323-25 (1980) (sale of business); Acorida Northeast, Inc. v. Academic Risk Resources & Ins., LLC, 19 Mass. L. Rptr. 75, 2005 WL 704870 (Mass. Super. 2005) (employment agreement). This is not such a case, and the differences are important. The non-solicitation obligation here did not arise, as nearly all of them do, in a context of innocence; the provision was agreed to in settlement of federal- and state-law claims that Curran had stolen MassTech's product, was passing it off as his own, and was directly approaching MassTech's customers to try to undercut his employer. The Court found those allegations at least sufficiently well supported to warrant preliminary injunctive relief.

Further, the provision in question arises not from employment, but from an agreement to settle litigation. Thus, the case law evaluating non-solicitation agreements has less relevance here than it otherwise might. Traditionally, those cases evaluate the strength of the employer's interest in protecting its good will and its confidential information. See, e.g., Wordwave, Inc. v. Owens, 19 Mass. L. Rptr. 37, 2004 WL 3250472 (Mass. Super. 2004) (evaluating such interests and enforcing non-solicitation agreement). And MassTech certainly has such interests here; Curran was a salesman, with no responsibility for creating the product but near-sole responsibility for calling on customers to sell it. But MassTech's interests in support of this covenant go far beyond those in the traditional case, because it accepted a permanent injunction as partial consideration for releasing its claims against the defendants. MassTech's interests in

enforcement of this provision include not only the intangible concerns about good will and confidential information, but also its interests in obtaining compensation for Curran's wrongdoing.

Finally, there is an Alice-in-Wonderland quality to the current proceeding. Curran was represented by counsel throughout this case. He was capable of reading and understanding the settlement proposal that MassTech offered and of evaluating whether the proposed ban on solicitation was a term that would interfere with his employment plans. He apparently thought not, and signed the agreement. His refusal within the space of a few months to follow through on his commitment is an unadorned breach of contract, and he has no intelligible defense to enforcement of an agreement into which he freely entered.

## CONCLUSION

For all of the foregoing reasons, MassTech's motion for judgment should be granted. The Court should enter judgment against Robert and Kevin Curran, and dismiss all claims against The Marketplace Group with prejudice, all in accordance with Paragraph 3 of the Settlement Agreement.

Respectfully submitted,

MASSTECH COMMUNICATIONS, INC.

By its attorneys,

/s/ Mark W. Batten
Mark W. Batten
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9850

Dated: November 28, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by first-class mail, postage prepaid, this 28th day of November, 2005.

/s/Mark W. Batten
Mark W. Batten